```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOSEPH CICCONE, individually and
on behalf of all others similarly
situated,

                    Plaintiff,
                                          MEMORANDUM & ORDER
         -against-                        21-CV-2428(JS)(JMW)

CAVALRY PORTFOLIO SERVICES, LLC,
and CAVALRY SPV I, LLC,

                    Defendants.
----------------------------------X
MICHAEL PEARL,

                    Plaintiff,

         -against-                        21-CV-3764(JS)(AYS)

FINANCIAL RECOVERY SERVICES, INC.,

                    Defendant.
----------------------------------X
```

APPEARANCES
For Plaintiff
Joseph Ciccone:            David M. Barshay, Esq.
                           Barshay, Rizzo, & Lopez, PLLC
                           445 Broadhollow Road, Suite CL18
                           Melville, New York  11747

For Plaintiff
Michael Pearl:             Raymond Nardo, Esq.
                           Raymond Nardo, P.C.
                           129 Third Street
                           Mineola, New York  11501

For Defendants
Cavalry Portfolio
Services, LLC &
Cavalry SPV I, LLC:        Donald S. Maurice, Jr., Esq.
                           Thomas R. Dominczyk, Esq.
                           Maurice Wutscher LLP
                           5 Walter Foran Boulevard, Suite 2007
                           Flemington, New Jersey  08822

1

```
For Defendant
Financial Recovery
Services, Inc.:           Michael Thomas Etmund, Esq.
                          Moss & Barnett
                          150 South Fifth Street, Suite 1200
                          Minneapolis, Minnesota  55402
```

SEYBERT, District Judge:

The cases addressed in this order invoke the so-called "mailing vendor" theory of liability under the Fair Debt Collection Practices Act ("FDCPA"). After the Supreme Court issued its decision in TransUnion, LLC v. Ramirez, this Court ordered Plaintiffs in these actions to demonstrate how the allegations in their respective complaints could establish Article III standing under TransUnion. Having considered their responses, the Court concludes that Plaintiffs lack standing in these cases. Accordingly, for the reasons set forth below, the Complaints are DISMISSED.

BACKGROUND

I.  Facts

Plaintiffs allege that Defendants-debt collectors violated the FDCPA by using third-party vendors to print and mail Plaintiffs "dunning" letters to advise them of their debt obligations. (Pearl v. Fin. Recovery Servs., Inc. ("The Pearl Action"), No. 21-CV-3764 (E.D.N.Y. 2021); Ciccone v. Cavalry Portfolio Servs., LLC ("The Ciccone Action"), No. 21-CV-2428 (E.D.N.Y. 2021).) Plaintiffs allege Defendants conveyed "private

2

information" to third-party vendors -- including Plaintiffs' names and addresses; status as debtors; the precise amounts of their alleged debts; the entities to which Plaintiffs allegedly owed debts; and information that Plaintiffs defaulted on the debts -- so the vendors could draft and mail collection letters to each Plaintiff regarding his debt obligations.  (The Pearl Action, Compl., ECF No. 1, ¶¶ 2, 14-15; The Ciccone Action, Compl., ECF No. 1, ¶¶ 25-27, 29-32.)  According to Plaintiffs, Defendants' conduct violates the FDCPA, which provides that, subject to several exceptions not relevant here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."  15 U.S.C. § 1692c(b).  Plaintiffs claim that this "unauthorized disclosure of such private and sensitive information" harmed them.  (The Ciccone Action, Compl. ¶¶ 46, 62; The Pearl Action, Compl. ¶ 25 ("The communication of this legally protected information about Plaintiff's consumer debt to a third party harmed Plaintiff, and Plaintiff's reputation, by disclosing information about Plaintiff's repayment of debts, truthfulness, solvency, and trustworthiness.").)

The Ciccone Action, styled as a class action, also alleges Defendants there violated a separate provision of the FDCPA which prohibits the use of any false representation or deceptive

means to collect on a debt. (The Ciccone Action, Compl. ¶¶ 70-84 (alleging Defendants violated 15 U.S.C. § 1692e).) Specifically, Plaintiff alleges that the collection letter he received failed to specify which debt-collector entity -- Cavalry Portfolio Services, LLC or Cavalry SPV I, LLC -- offered him a discount, in violation of the least sophisticated consumer test. (Id. ¶¶ 75-79.) Plaintiff alleges no facts to demonstrate how this alleged statutory violation injured him.

II. Procedure

On October 4, 2021, this Court issued an order directing the parties to brief the issue of Article III standing in the wake of the Supreme Court's decision in Transunion LLC v. Ramirez, 141 S. Ct. 2190 (June 21, 2021). (See Oct. 4, 2021 Order to Show Cause (following In re FDCPA Mailing Vendor Cases, 2021 WL 3160794 (E.D.N.Y. July 23, 2021) (Brown, J.)).[1] The parties in The Pearl Action and The Ciccone Action complied with the Court's directive, filing letter responses addressing the standing issues raised therein. (See The Pearl Action, Pl. Ltr, ECF No. 11, Defs. Ltr., ECF No. 12; The Ciccone Action, Pl. Ltr., ECF No. 20.) Plaintiffs

---

[1] The following six cases were subject to the Order to Show Cause: Ciccone v. Cavalry Portfolio Services, LLC, No. 21-CV-2428; Ford v. Client Services, Inc., No. 21-CV-2588; Damian v. Commonwealth Financial System, Inc., No. 21-CV-3604; Pearl v. Financial Recovery Services, Inc., No. 21-CV-3764; Corea v. Radius Global Solutions LLC, No. 21-CV-3765; and Ceron v. Midland Credit Management, Inc., No. 21-CV-4257.

4

did not oppose dismissal in the remaining four actions.

## DISCUSSION

I. Legal Standard

Article III standing requires the plaintiff to show "(1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Maddox v. Bank of New York Mellon Trust Co., No. 19-CV-1774, 2021 WL 5347004, at *3 (2d Cir. Nov. 17, 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). The issue in these cases is whether Plaintiffs have met the injury-in-fact requirement.

"To demonstrate injury in fact, a plaintiff must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Id. at *3 (quoting Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)). At issue here is the requirement Plaintiffs show a concrete harm. As the Supreme Court began in its recent TransUnion decision: "No concrete harm; no standing." 141 S. Ct. at 2200.

The plaintiffs in TransUnion consisted of a class of 8,185 individuals who alleged that TransUnion, a credit reporting agency, violated the Fair Credit Reporting Act ("FCRA") by failing to use reasonable procedures to ensure the accuracy of their credit files, as maintained internally by TransUnion. Id. Specifically,

5

TransUnion placed an alert on each plaintiffs' respective credit file indicating that his or her name was a "potential match" to a name on the U.S. Treasury Department's Office of Foreign Assets Control list of "specially designated nationals" who threaten the nation's security, which includes "terrorists, drug traffickers, or other serious criminals." Id. at 2201. The plaintiffs also claimed that TransUnion failed to adhere to the FCRA's formatting requirements in the mailings used to inform the plaintiffs about the potential match. Id.

The Supreme Court first "considered the characteristics that make a harm 'concrete' for purposes of Article III." Maddox, 2021 WL 5347004, at *4 (quoting TransUnion, 141 S. Ct. at 2204). To determine whether the plaintiff alleges a concrete harm sufficient to confer standing, courts should consider "whether the harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." TransUnion, 141 S. Ct. at 2204 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016)). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." Id. The Court further observed that Congress's view may be "instructive" in determining whether a harm is sufficiently concrete, although it cautioned that "an injury in law is not an injury in fact." Id. at 2204-05 (In the context of Article III standing, "an important difference exists between

6

(i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law.").

Applying these requirements to the case at hand, the Supreme Court found that a subset of the plaintiffs sufficiently alleged standing. Id. at 2208. Specifically, the 1,853 class members whose credit reports were disseminated to third-party businesses could demonstrate standing, because they suffered a harm with a "close relationship" with the reputational harm associated with the tort of defamation. Id. at 2208-09. However, for the remaining 6,332 class members whose credit files were maintained by TransUnion but not provided to any potential creditors during the class period, the Court held that they could not establish standing by analogizing to the tort of defamation, which requires publication of the alleged falsity. Id. at 2209-10 ("Publication is 'essential to liability' in a suit for defamation."). Nor could those plaintiffs proceed by asserting that they were exposed "to a material risk that the information would be disseminated in the future to third parties and thereby cause them harm." Id. at 2210. According to the Court, this risk would need to have caused the plaintiffs "some other injury" to furnish Article III standing. Id. at 2211. Last, with respect to the plaintiffs' claim that TransUnion violated the FCRA by failing

7

to provide them with their complete credit files upon request, the Court found that the plaintiffs failed to "demonstrate that they suffered any harm <u>at all</u> from the formatting violations." <u>Id.</u> at 2213 (emphasis in original).

II. <u>Analysis</u>

A. <u>The Mailing-Vendor Theory</u>

As Plaintiffs recognize, the <u>TransUnion</u> decision "substantially and materially changed" a district court's analysis of Article III standing in statutory consumer law cases. (See <u>The Ciccone Action</u>, Pl. Ltr. at 1.) In fact, sister courts, within and without the Second Circuit, have dismissed FDCPA actions invoking the mailing-vendor theory for lack of Article III standing. <u>See</u> <u>In re FDCPA Mailing Vendor Cases</u>, 2021 WL 3160794, at *5-6; <u>Shields v. Prof'l Bureau of Collections of Maryland, Inc.</u>, No. 20-CV-2205, 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021). For substantially the same reasons as those persuasively set forth in Judge Brown's omnibus order dismissing several FDCPA cases pursuing the mailing-vendor theory, the Court similarly concludes that Plaintiffs in these actions have failed to allege a concrete injury sufficient to confer Article III standing. Because the caselaw in this context has developed since Judge Brown's order, the Court considers these developments.

First, Plaintiffs point to the Eleventh Circuit's decision in <u>Hunstein v. Preferred Collection & Mgmt. Servs., Inc.</u>

8

("Hunstein I"), 994 F.3d 1341 (11th Cir. 2021), which sanctioned the mailing-vendor theory. However, subsequent developments in Hunstein undermine Plaintiffs' reliance. Upon petition for rehearing after the intervening Supreme Court decision in TransUnion, the Hunstein I panel vacated the opinion on which Plaintiffs rely. Hunstein v. Preferred Collection & Mgmt. Servs., Inc. ("Hunstein II"), No. 19-CV-14434, 2021 WL 4998980, 17 F.4th 1016 (11th Cir.), reh'g en banc granted, opinion vacated, 17 F.4th 1103 (11th Cir. 2021). And while the majority in Hunstein II concluded that plaintiff's mailing-vendor allegations could establish Article III standing, that opinion was vacated pending rehearing en banc. 17 F.4th 1103 (11th Cir. 2021). However the Eleventh Circuit eventually rules, its decision does not bind this Court, and at this juncture, the vacated opinions are of little persuasive value.

In any event, the Court finds the facts in Hunstein distinguishable from those alleged in these cases, rendering its standing analysis inapposite. In Hunstein, the plaintiff incurred a debt arising out of his minor son's medical treatment. Hunstein II, 2021 WL 4998980, at *2. Thus, the debt collector communicated to the third-party vendor not only the plaintiff's status as a debtor and the balance of his debt, but also that the debt concerned his son's medical treatment and his son's name. Id. As a result, when the Hunstein II majority examined whether the

9

plaintiff alleged a "close historical or common-law analogue for [his] asserted injury," the majority analogized to the common-law tort of "public disclosure of private facts," pursuant to which "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Id. at *7 (quoting RESTATEMENT (SECOND) OF TORTS § 652D (1977)). Here, Plaintiffs do not allege Defendants communicated to the third-party vendors "intensely private information" like that at issue in Hunstein. Id. Accordingly, it is "difficult to suggest" that the type of information Defendants communicated to their third-party vendors, such as Plaintiff's name and address; Plaintiff's status as a debtor; or the precise amount of the alleged debt, "would be highly offensive to a reasonable person." In re FDCPA Mailing Vendor Cases, 2021 WL 3160794, at *6 ("[I]t would be difficult to suggest, using the 'invasion of privacy' analysis adopted in Hunstein, that communication of purported non-payment of a relatively de minimis debt to a mailing vendor constitutes a 'matter publicized . . . of a kind that . . . would be highly offensive to a reasonable person.'"). Put otherwise, Plaintiffs are alleging a different type of harm than that which would give rise to liability under

10

the common-law tort of public disclosure of private facts.[2]

There are additional problems with the Hunstein II panel's comparator analysis, as summarized by the dissent in that case. 2021 WL 4998980, at *17-22 (Tjoflat, J., dissenting). For example, at common law, the public disclosure of private facts tort required the information at issue to be "publicized." RESTATEMENT (SECOND) OF TORTS § 652D cmt. A. According to the allegations here, Plaintiffs' debt-related information was communicated to a third-party vendor, whose employees presumably viewed it. But "[c]ommunication of a fact 'to a small group of persons is not publicity.'" Id. at *18. Rather, courts analyzing this privacy tort have required "publicity in the broad, general sense of the word 'public.'" Id. (quoting Tureen v. Equifax, Inc., 571 F.2d 411, 418 (8th Cir. 1978)). As such, the information at issue here did not attain the requisite level of publicity.

The Court recognizes that TransUnion and Spokeo spoke of a "close relationship" between the alleged injury and a harm traditionally recognized as providing grounds for a lawsuit in American courts, not an "exact duplicate." TransUnion, 141 S. Ct. at 2204. In the only Second Circuit decision to follow and apply

---

[2] See RESTATEMENT (SECOND) OF TORTS § 652D cmt. A, illus. 1 ("A, a creditor, writes a letter to the employer of B, his debtor, informing him that B owes the debt and will not pay it. This is not an invasion of B's privacy under this Section.").

TransUnion to date, the panel applied this test[3] by examining whether the "type" of harm alleged was "well established as actionable at common law." See Maddox, 2021 WL 5347004, at *6 (holding a lender's delay in recording a mortgage satisfaction, which "risks creating the false appearance that the borrower has not paid the underlying debt and is thus more indebted and less creditworthy," causes the "type of reputational harm -- i.e., one that flows from the publication of false information -- [that] is well established as actionable at common law"); see also Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 93 (2d Cir.), cert. denied sub nom. Bowes v. Melito, 140 S. Ct. 677 (2019) ("[T]he harms Congress sought to alleviate through passage of the [Telephone Communications Protection Act] closely relate to traditional claims, including claims for 'invasions of privacy, intrusion upon seclusion, and nuisance.'"). This approach may involve consideration of the common-law analogue's "essential" or "key" elements to ensure the alleged harm and analogue bear a close resemblance. See TransUnion, 141 S. Ct. at 2209 (concluding that plaintiffs' alleged harm had no historical or common-law analog

---

[3] To date, the Second Circuit has not embraced or otherwise considered the degree-kind distinction used by other circuit courts in this context, which asks whether the "alleged injury is similar in kind to the harm addressed by a common-law cause of action, not that it is similar in degree." Hunstein II, 2021 WL 4998980, at *5-7 (summarizing circuit decisions applying the degree-kind distinction).

where an element essential to liability under the proposed common-law analog, defamation, was lacking); Maddox, 2021 WL 5347004, at *6 (concluding the plaintiffs did not allege reputational harm because they could not demonstrate communication of the harmful information to a third party, as required to sustain a defamation claim at common law); Hunstein II, 2021 WL 4998980, at *18-22 (Tjoflat, J., dissenting) (analyzing common-law comparator's essential elements); see also Melito, 923 F.3d at 93 (relying on decisions from sister circuits that did not require the alleged harm to be actionable at common law to be closely related). Thus, by looking to the contours of the public disclosure of private facts tort as it developed under the common law, the Court is not demanding an exact duplicate, but rather looking for similarities on which to hang its hat. Plaintiffs provide none.

Plaintiff in The Pearl Action also raises the concern that the information the debt collector shared with the third party could be compromised by a data breach. (Pl. Ltr. at 4.) It is true that "a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." TransUnion, 141 S. Ct. at 2211 n.7. But Plaintiffs must "plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." Maddox, 2021 WL 5347004, at 6. Here, there are no allegations in the Complaint that The Pearl

13

Action Plaintiff suffered a "separate concrete harm" as a result of this exposure. TransUnion 141 S. Ct. at 2211.

Last, Plaintiffs argue, and the Court agrees, that the Court must consider Congress's view, which is "instructive" in determining whether a harm is sufficiently concrete. TransUnion, 141 S. Ct. at 2204. Plaintiffs reference the congressional findings embodied in the FDCPA's preface, namely, the finding that abusive debt collection practices contribute to "invasions of individual privacy." 15 U.S.C. § 1692(a). In this context, the Court is hesitant to rely heavily on the congressional findings, which are written in general, hortatory terms. Cf. National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 260 (1994) ("We also think that the quoted statement of congressional findings is a rather thin reed upon which to base a requirement.") This is especially the case where other, more specific provisions of the FDCPA condone the use of intermediaries to communicate with debtors. As Judge Tjoflat reasoned in his dissenting opinion in Hunstein II, the FDCPA presupposes debt collectors may use telegrams to communicate with debtors, "even though that means the contents of the telegram would be transmitted through a telegram operator." Hunstein II, 2021 WL 4998980, at *22-23 (Tjoflat, J., dissenting).[4] Thus, the Court finds the judgment of Congress does

---

[4] In fact, the Bureau of Consumer Financial Protection ("CFPB") recently found that "over 85 percent of debt collectors surveyed

14

not favor Plaintiffs. TransUnion, 141 S. Ct. at 2204-05 ("[U]nder Article III, an injury in law is not an injury in fact.").

B. Alleged Deceptive Practices

As noted supra, The Ciccone Action also alleges Defendants violated a separate provision of the FDCPA by failing to specify in their collection letter which debt-collector entity, Cavalry Portfolio Services, LLC or Cavalry SPV I, LLC, offered Plaintiff a discount, in violation of the least sophisticated consumer test. However, Plaintiff has not alleged that he suffered any harm at all from this violation. Plaintiff does not allege that the wording confused or distressed him, let alone that he relied on it to his detriment in any way, or that he would have availed himself to the discount had the wording been clearer. Cf. TransUnion 141 S. Ct. at 2213. "Without any evidence of harm caused by the format of the mailings, these are 'bare procedural violation[s], divorced from any concrete harm,'" which do not suffice for Article III standing. Id.

---

by the Bureau reported using letter vendors." Thus, as Judge Tjoflat reasoned, Congress's view can also be gleaned from the fact that the CFPB, which has the authority to issue rules under the authority of the FDCPA, issued new rules that "expressly contemplate the use of mail vendors in debt collection." Hunstein II, 2021 WL 4998980, at *23 n.13 (Tjoflat, J., dissenting) (citing 85 Fed. Reg. 76734, 76738 (Nov. 30, 2020) (to be codified at 12 C.F.R. § 1006), 86 Fed. Reg. 5766, 5845 n.446 (Jan. 19, 2021) (to be codified at 12 C.F.R. § 1006)).

15

CONCLUSION

For the stated reasons, Plaintiffs in each of these cases have not sufficiently alleged a concrete injury in fact sufficient to confer Article III standing. As such, the Court lacks jurisdiction over these claims, and the cases are DISMISSED WITHOUT PREJUDICE. The Clerk of the Court is respectfully directed to terminate the motion pending at ECF No. 19 in The Ciccone Action as MOOT, and mark these cases CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November 29, 2021
Central Islip, New York